**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                -against-                    **MEMORANDUM OF
DECISION AND ORDER**

DAVID VASQUEZ and LEDWIN CASTRO,    03-CR-851 (ADS)

                              Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**BENTON J. CAMPBELL, UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK**
610 Federal Plaza
Central Islip, New York 11722
    By: Richard Donohue, Assistant United States Attorney
        John Durham, Assistant United States Attorney

**LORNA GOODMAN, NASSAU COUNTY ATTORNEY**
One West St
Mineola, N.Y. 11501
    By: Tatum J. Fox, Deputy County Attorney

**ROBERT LARUSSO, ESQ.**
Attorney for Defendant David Vasquez
300 Old Country Rd., Suite 341
Mineola, N.Y., 11501

**LAW OFFICE OF PETER J. TOMAO**
Attorney for Defendant Ledwin Castro
226 Seventh Street, Suite 302
Garden City, NY 11530
    By: Peter J. Tomao, Esq., Of Counsel

**SPATT, District Judge**.

Defendant Ledwin Castro ("Castro") has moved for an order directing the Government to provide: (1) the bases for FBI Special Agent Reynaldo Tariche's anticipated expert testimony; (2) the identities of individuals related to three homicides allegedly committed pursuant to the charged racketeering enterprise; and (3) any additional documents that the Government intends to use in its case-in-chief at least 30 days prior to trial.  Also pending before the Court are motions by the Government and Nassau County, a non-party in this action, to quash a subpoena seeking the production of documents pertaining to the above-mentioned homicides.

## I.  BACKGROUND

Castro and his co-Defendant David Vasquez ("Vasquez") (collectively "the Defendants") are charged with conspiracy to commit assault with a dangerous weapon in aid of racketeering activity, 18 U.S.C. § 1959(a)(6), assault with a dangerous weapon in aid of racketeering activity, 18 U.S.C. § 1959(a)(3), and the discharge of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1).  These charges stem from the Defendants' alleged participation in two drive-by shootings in Nassau County on June 18, 2003.

### A.  The Drive-By Shootings

The Defendants are both admitted members of MS-13, a nationwide criminal gang organized into local subunits referred to as "cliques."  Vasquez was a member of a Long Island clique headed by Castro known as the Freeport Locos Salvatruchas.

The evidence at the first trial showed that, on the night of the shootings, the Defendants and two other MS-13 gang members, Ralph Admettre and Nieves Argueta, drove to a laundromat in Hempstead to search for members of SWP, a rival gang. From a van parked in a gas station parking lot across the street, Vasquez opened fire on a crowd outside the laundromat, wounding Ricardo Ramirez and Douglas Sorto.

Less than an hour later, the Defendants, Admettre and Nieves traveled to a delicatessen in Freeport where they encountered a group of young black men that they believed to be members of the Bloods, another rival gang. At Vasquez's urging, Nieves shot Carlton Alexander seven times in the back. Despite being struck by multiple gunshots, Alexander survived. The Defendants, Admettre and Nieves were arrested by the Nassau County Police Department approximately one month after the shootings.

**B. The Indictment and Trial**

On June 23, 2005, a federal grand jury returned a superseding indictment against six MS-13 members including, among others, the Defendants, Admettre and Nieves. Prior to trial, United States District Judge Leonard Wexler severed the charges against Castro and Vasquez from the charges against several of their co-Defendants. The Defendants' remaining co-defendants pleaded guilty to assault and

Admettre pleaded to the conspiracy charge and to using a firearm during a crime of violence. However, Castro and Vasquez proceeded to trial on July 19, 2005.

At the trial, the Government called Hector Alicea, an officer with the New York State Police, to provide expert testimony with regard to MS-13. In particular, Alicea testified to MS-13's history, structure, and modes of communication. The Government also called the three shooting victims, Admettre, and another co-defendant to testify against the Defendants. In addition, the Government offered into evidence telephone records, the gun used in the shootings, ballistics reports, and the Defendants' post-arrest confessions. On July 26, 2005, a jury found both of the Defendants guilty on all counts.

## C. The Decision of the Second Circuit

On October 6, 2008, the Second Circuit vacated the Defendants' convictions and remanded the case to the District Court finding that Alicea's testimony violated the Confrontation Clause of the Sixth Amendment and Fed. R. Evid. 703 because Alicea had taken out of court statements obtained from MS-13 members during custodial interrogations and conveyed the substance of those statements to the jury. United States v. Mejia, 545 F.3d 179, 199 (2d Cir. 2008). The Court concluded that, under the circumstances, Alicea was "simply summarizing an investigation by others that [was] not part of the record and presenting it in the guise of an expert opinion." Id. (internal quotation marks and citations omitted). The Court found that admitting

Alicea's testimony was not harmless error because his testimony beared heavily on the material issues of whether MS-13 was an enterprise and whether the gang had engaged in acts and threats of murder. Id. at 200.

**D. The Re-Trial of the Defendants**

At the re-trial, the Government will be required to prove, among other things, that MS-13 was a racketeering enterprise within the meaning of 18 U.S.C. § 1959(b)(1) and 18 U.S.C. § 1961(1). In particular, the Government will have to show that MS-13 was involved in acts and threats of murder. To that end, the Government intends to prove that MS-13 members planned and carried out the homicides of Damian Corrente, Jaime Figueroa, and Dagoberto Ramos, prior to committing the assaults charged in this case. In order to establish that MS-13 is a racketeering enterprise, the Government will also rely, at least in part, on the expert testimony of FBI Special Agent Reynaldo Tariche.

## II. DISCUSSION

**A. The Motions to Quash**

Fed. R. Crim. P. 17(c)(1) provides, in pertinent part, that a "subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Under Rule 17(c)(2), courts enjoy the discretion to quash or modify a subpoena where "compliance would be unreasonable or oppressive."

On April 3, 2009, counsel for Castro served a subpoena on the Nassau County Police Department, seeking any and all records, including witness statements, that pertained to the homicides of Damian Corrente and Jaime Figueroa. At oral argument on these motions, counsel for Castro expanded his request to include any and all records pertaining to the homicide of Dagoberto Ramos. Nassau County has moved to quash that portion of the subpoena which seeks witness statements on the ground that such a request is prohibited by Rule 17(h). Nassau County has also sought to quash that portion of the subpoena which requests documents related to the Corrente homicide on the ground that these materials are protected by the law enforcement privilege.

The Government has moved to quash the subpoena in its entirety. In particular, the Government contends that the subpoena requests privileged information and, in any event, fails to meet the requirements of Rule 17. With respect to the Government's motion, Castro contends, as a preliminary matter, that the Government lacks standing to quash a subpoena served on a third-party.

**1. Whether the Government Has Standing**

The Court must determine, as a threshold matter, whether the Government has standing to challenge Castro's subpoena. Generally, "a party whose legitimate interests are affected by a subpoena may move to quash that subpoena." United States v. Nektalov, 2004 WL 1574721, at *1 (S.D.N.Y. 2004) (collecting cases). One

important question that Courts have considered in deciding the issue of standing is "whether the subpoenaed party joins in the Government's motion to quash." Id. (collecting cases).

Here, the Court finds that the Government has standing to challenge the subpoena because, at least in part, Nassau has joined in their application and the Government has a legitimate interest in preventing Castro from using a subpoena to obtain discovery materials that would otherwise be protected from disclosure. See United States v. Louis, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (finding that the Government had standing to quash a subpoena served on the Port Authority where, among other things, the federal prosecution arose out of a Port Authority investigation and the Port Authority joined the Government in seeking to quash the subpoena).

The Court also notes that, regardless of the parties' standing, the Court has an independent duty to review the propriety of the subpoena - a duty in this case that requires the Court to consider whether the documents sought are privileged and whether the subpoena itself comports with the requirements of Rule 17. See United States v. Khan, 2009 WL 152582, at *6 (E.D.N.Y. Jan. 20, 2009) (citing United States v. Weissman, 2002 WL 31875410, at *1 n. 1 (S.D.N.Y. Dec. 26, 2002)) (noting that "[r]egardless of the government's standing, the court has a duty to ensure that subpoenas are issued only for proper purposes and that they are in compliance with Rule 17.").

**2. Whether the Subpoena Comports with the Requirements of Rule 17**

Both the Government and Nassau County challenge whether Castro's subpoena comports with the requirements of Rule 17. In order to address this issue, a brief review of the interplay between Rules 16 and 17 of the Federal Rules of Criminal Procedure is necessary.

Pre-trial discovery in criminal cases is largely governed by Rule 16. Louis, 2005 WL 180885, at *2. Courts have been careful to point out that Rule 17(c), by contrast, should not be construed as a broad discovery device. See United States v. Cherry, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (citing United States v. Marchisio, 344 F.2d 653, 669 (2d Cir. 1965)). However, Rule 17(c) does permit a defendant to obtain *evidentiary* material prior to trial. See United States v. RW Professional Leasing Services Corp., 228 F.R.D. 158, 161 (E.D.N.Y. 2005) (citing United States v. Nixon, 418 U.S. 683, 698-99, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974)) (observing that "[t]he purpose of rule 17(c) is not to facilitate discovery, but to enable a party to obtain and inspect evidentiary material prior to trial."). The Court "assesses and controls the extent to which [Rule 17] is used in a good-faith effort to obtain evidence 'by its power to rule on motions to quash and modify.'" Louis, 2005 WL 180885, at *3 (quoting Bowman Dairy Co v. United States, 341 U.S. 214, 219, 71 S. Ct. 675, 95 L. Ed. 879 (1951)).

In deciding whether to quash or modify a subpoena, courts are guided by the factors set forth in United States v. Nixon. 418 U.S. 683, 94 S. Ct. 3090; 41 L. Ed. 2d 1039 (1974). Under the Nixon factors, a party seeking the production of the documents must demonstrate that the materials are: (1) relevant; (2) admissible; (3) specifically identified; and (4) not otherwise procurable. Id. at 699-670. "In order to meet its burden, the proponent has to show that the documents sought are both relevant and admissible at the time of the attempted procurement." RW Professional Leasing Services Corp., 228 F.R.D. at 162 (citing United States v. Marchisio, 344 F.2d 653, 669 (2d Cir. 1965), and United States v. Jenkins, 2003 WL 1461477, at *4 (S.D.N.Y. Mar. 21, 2003)).

First, the documents sought here by Castro are relevant. The Government has acknowledged that in order to show that MS-13 is a racketeering enterprise, it intends to prove that its members carried out the Corrente, Figueroa, and Ramos homicides. The subpoena seeks information about these homicides that would shed light on the dispositive issue of whether MS-13 had any role in these crimes. Second, the Court is satisfied that some of the documents requested—police reports, reports of scientific evaluations, criminal records, and case worksheets—may be admissible at trial. However, Castro has failed to carry his burden to show that the requested witness statements would be admissible at trial. See Cherry, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) (citing Marchisio, 344 F.2d at 669) ("In this respect, Rule 17(c) can be

9

contrasted with the civil rules which permit the issuance of subpoenas to seek production of documents or other materials which, although not themselves admissible, could lead to admissible evidence."). Moreover, if the statements sought were made by individuals the Government intends to call as witnesses at the trial, then even if they were admissible Castro would still not be entitled to them now because Rule 17(h) expressly precludes a party from subpoenaing a witness statement. Accordingly, the motions to quash Castro's request for witness statements are granted.

With respect to the third Nixon factor, the Court finds that Castro's subpoena identifies the documents sought with sufficient particularity. See RW Professional Leasing Services Corp., 228 F.R.D. at 162 ("When determining whether a request for documents is specifically identified, the proponent must show that the subpoena is being used to obtain relevant evidence and not merely as a 'fishing expedition' to expand discovery."). Here, Castro has confined his request to documents pertaining only to the three homicides that are central to the Government's case. See id. (citing In re Grand Jury Subpeona, 1992 WL 142014, at *7 (E.D.N.Y. 1992)) (observing that a "request is generally sufficiently specific where it limits documents to a reasonable period of time and states with reasonable particularity the subjects to which the documents relate."). Finally, these documents are not otherwise procurable without a

subpoena because they are in the sole possession of the Nassau County Police Department.

Although Castro has satisfied the Nixon factors and therefore shown that his subpoena comports, at least in part, with the requirements of Rule 17, the Court must still determine whether the documents sought are nevertheless subject to the law enforcement privilege.

### 3. Whether the Law Enforcement Privilege Applies

The purpose of the law enforcement privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Dep't of Investigation of City of New York, 856 F.2d 481, 484 (2d Cir. 1988). It is settled law that in asserting the law enforcement privilege, a party carries the burden to set forth "those facts that are the essential elements of the privileged relationship." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984).

Here, Nassau County claims that the documents sought in connection with the Corrente homicide are subject to the law enforcement privilege because, among other reasons, this case is still the subject of an open investigation. In particular, Nassau County contends that producing these documents would expose law enforcement

techniques used in the investigation, deter witnesses from cooperating, and expose confidential sources.  Nassau County also notes that Castro's request is particularly inappropriate because he has already received, among other materials, autopsy reports, ballistics reports, and post-arrest statements relating to the Corrente homicide through Rule 16 discovery.  Although Nassau County has indicated its willingness to produce documents related to the Figueroa and Ramos homicides, the Government appears to contend that the law enforcement privilege also applies to these materials.

      The Court declines to adopt a per se rule that a subpoena may not issue for documents contained in the files of an ongoing police investigation.  However, Nassau County has offered several compelling reasons why certain documents in the Corrente homicide file are subject to the law enforcement privilege.  Although Nassau County appears not to be concerned that producing the Figueroa and Ramos documents carries the same risks, the Government argues—and the Court recognizes—that the privilege may apply to these documents as well.  However, given that these documents could play an important role in Castro's defense, the Court finds it appropriate to conduct an in camera review to determine which of these documents, if any, are privileged.  Accordingly, Nassau County is directed to provide the Court with any documents in the Corrente, Figueroa, and Ramos homicide files that are responsive to Castro's subpoena.  The motions to quash are held in abeyance until the Court has had an opportunity to conduct an in camera review.

**B. Castro's Discovery Motion**

Castro has moved for an order directing the Government to provide: (1) the bases for FBI Special Agent Reynaldo Tariche's anticipated expert testimony; (2) the identities of witnesses related to the Corrente, Figueroa, and Ramos homicides; and (3) any additional documents that the Government intends to use in its case-in-chief at least 30 days prior to trial. The Court will address each of these requests in turn.

**1. Expert Disclosures**

Rule 16(a)(1)(G) requires the Government to produce a written summary of expert testimony that it intends to offer during its case-in-chief. In particular, the Rule provides that this summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The Second Circuit has explained that expert disclosure "is intended to minimize [the] surprise that often results from unexpected testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." United States v. Cruz, 363 F.3d 187, 196 n.1 (2d Cir. 2004) (quoting United States v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997)).

Here, the Government indicates that Special Agent Tariche will testify that: (1) MS-13 is a street gang that originated in Central America and later spread throughout the United States with members largely of Central American descent; (2) MS-13 is divided into subunits referred to as cliques and that members hold clique and inter-clique meetings referred to as "universals"; (3) MS-13 members use certain handsigns and wear blue and white to signify membership; (4) MS-13 members communicate primarily in Spanish; (5) MS-13 has cliques on Long Island who have violent rivalries with other Long Island gangs; and (6) within MS-13, the word "chevala" is a derogatory term for a rival gang member. Castro is satisfied that the Government has adequately set forth Tariche's qualifications and the substance of his putative testimony. However, Castro contends that the Government has failed to offer the bases and reasons for his conclusions. The Court disagrees.

In two letters, dated January 22, 2009 and April 1, 2009, the Government explained that Tariche has analyzed and relied upon various sources during the course of his career—information obtained at conferences, surveillance, MS-13 literature, interviews with gang members and victims—in reaching the conclusions he will present to the jury. Under the circumstances, this description of the bases for Tariche's testimony is sufficient. The conclusions Tariche has drawn about MS-13 are the product of a 19-year career in law enforcement not a particular set of documents that can be readily produced. The information the Government has

provided to Castro regarding the bases for Tariche's testimony is sufficient to give Castro a fair and adequate opportunity to challenge Tariche's expert testimony in a Daubert motion. 509 U.S. 579 (1993). Accordingly, Castro's motion for an order directing the Government to provide more details about the bases of Tariche's expert testimony is denied.

### 2. The Identities of Individuals Related to the Corrente, Figueroa and Ramos Homicides

Castro contends that the Government has failed to disclose the identities and whereabouts of witnesses related to the Corrente, Figueroa, and Ramos homicides. Castro seeks an order compelling the Government to provide unredacted copies of discovery materials already provided so that he can determine the identities of these witnesses. In particular, Castro requests that the Court order the Government to unredact: (1) the name of the individual who was driving Figueroa when he was shot; (2) the names of three MS-13 gang members who were arrested for possession of the Figueroa murder weapon; (3) the name and home address of the mother of Herbert Chacon, a member of MS-13; and (4) the home address of Chacon's co-defendant, Pedro Rosales.

The parties acknowledge that Rule 16 neither authorizes nor forbids the disclosure of witness identities. See United States v. Bejasa, 904 F.3d 137, 139 (2d Cir. 1990) (noting that Rule 16 does not require the Government to provides the names and addresses of its witnesses). However, Castro requests that the Court

exercise its discretion to compel such disclosure. See United States v. Cannone, 528 F.2d 296 (2d Cir. 1975) (holding that the District Court has the discretion to compel the Government to disclose the identities of witnesses the Government intends to call at trial). Castro contends that learning the identities and whereabouts of these individuals is essential to his trial preparation and will allow him to develop evidence relating to whether the homicides were part of the charged RICO enterprise.

It is not evident to the Court whether the Government even intends to call these individuals at the trial. The Court notes that they were not called at the first trial. Should they call these individuals as witnesses at the trial, the Government has assured both Castro and the Court that it will disclose their identities in advance of the trial. However, even if the Court assumes that the Government will call each of these individuals as witnesses at the trial, Castro has still failed to convince the Court that disclosure of their identities is necessary at this stage.

In Roviaro v. United States, 353 U.S. 53, 60-61, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), the Supreme Court held that "[w]here the disclosure of an informant's identity . . . is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the [informant's] privilege must give way." The Court elaborated that in weighing whether an informant's identity should be revealed in advance of trial, courts should "[balance] the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62. In

balancing these competing interests, courts may consider "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." United States v. Jackson, 345 F.3d 59, 70 (2d Cir. 2003) (quoting Roviaro, 353 U.S. at 62). Generally, a defendant is able to establish that disclosure is proper where the defendant shows that "'informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence.'" United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988) (quoting United States v. Russotti, 746 F.2d 945, 950 (2d Cir. 1984)).

As noted above, it is not clear to the Court that any of the individuals whose identities Castro seeks will be witnesses at the trial. Indeed, it is not even clear that all of these individuals may be properly characterized as informants. In any event, Castro has made an insufficient showing that they would be key witnesses or that their putative testimony would be significant in determining Castro's guilt. On the other hand, given the nature of the crimes charged and the fact that the Defendants are admitted members of a violent gang, the Court perceives a genuine risk in requiring the present disclosure of these individuals' identities and locations.

Under the circumstances of this case, the conclusory argument that Castro needs the identities of these individuals in order to prepare for trial is not sufficient. See United States v. Flaharty, 295 F.3d 182, 202 (2d Cir. 2002) (quoting United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997)) ("Speculation that disclosure of the

informant's identity will be of assistance is not sufficient to meet the defendant's burden."); Cannone, 528 F.2d 296 (2d Cir. 1975) (refusing to order the Government to disclose the identities of trial witnesses where the defendant offered only a conclusory claim that such disclosure was necessary for the defense's trial preparation). Accordingly, Castro's motion for an order directing the Government to presently disclose the identities and whereabouts of individuals related to the Corrente, Figueroa, or Ramos homicides is denied.

### 3. Discovery Deadline

Castro is already in possession of all Rule 16, Brady, Giglio, and Jencks Act, 18 U.S.C. § 3500, materials from the original trial. However, because the Government intends to offer new evidence related to the Corrente, Figueroa, and Ramos homicides, Castro moves for an order directing the Government to provide any additional documents that it intends to use in its case-in-chief or any documents material to the Defendants' trial preparation at least thirty days prior to the trial. Castro also appears to request the production of any new Brady material within the same timeframe.

"The overwhelming majority of district courts, in accord with Second Circuit authority, favor the view that 'it is within a district court's authority to direct the Government to identify [prior to trial] the documents it intends to rely on in its case in chief.'" United States v. Vilar, 530 F. Supp. 2d 616, 639 (S.D.N.Y. 2008) (quoting

United States v. Giffen, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004)).  Here, with four months until the scheduled trial date of September 14, 2009, the Government acknowledges that discovery is already largely complete with respect to any new materials pertaining to the Corrente, Figueroa, and Ramos homicides.  Under the circumstances, the Court sees no reason for the Government not to produce and identify all the documents it intends to use in its case-in-chief at least 30 days in advance of trial.

To the extent that the Government has already uncovered new Brady material, it should also be disclosed at least 30 days prior to the trial.  See United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001) (holding that due process requires the Government to disclose Brady materials in time for its effective use at trial).  Of course, this order should not be understood to exclude the admission of any evidence that the Government obtains after the discovery deadline, provided the Government promptly discloses such evidence to the Defendants.

### III.  CONCLUSION

The motions by Nassau County and the Government to quash that portion of Castro's subpoena seeking statements by witnesses to the Corrente and Figueroa homicides are **GRANTED**.

Nassau County is directed to provide the Court with any and all documents in the Corrente, Figueroa, and Ramos homicide files that are

19

responsive to Castro's subpoena, within ten days of the date of this Order, so that the Court may conduct an in camera review of those documents to determine whether they are protected by the law enforcement privilege.

Castro's motion for additional information pertaining to the bases for Tariche's expert testimony is **DENIED**.

Castro's request for an order compelling the Government to immediately disclose the identities and whereabouts of individuals related to the Corrente, Figueroa, and Ramos homicides is **DENIED**.

The Government is directed to disclose any Brady material and all documents it intends to use in its case-in-chief at least 30 days prior to the trial.

**SO ORDERED.**

Dated: Central Islip, New York
       May 20, 2009

                                      *Arthur D. Spatt*
                                      Arthur D. Spatt
                                United States District Judge