UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

        -against-                           **MEMORANDUM OF
                                           DECISION AND ORDER**
LEDWIN CASTRO,                       03-CR-851 (ADS)

                         Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**BENTON J. CAMPBELL, UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK**
610 Federal Plaza
Central Islip, New York 11722
       By: Richard P. Donoghue, Assistant United States Attorney
           John J. Durham, Assistant United States Attorney

**LAW OFFICE OF PETER J. TOMAO**
Attorney for Defendant Ledwin Castro
226 Seventh Street, Suite 302
Garden City, NY 11530
       By: Peter J. Tomao, Esq., Of Counsel

**SPATT, District Judge**.

Presently before the Court are various pre-trial motions by Defendant Ledwin Castro ("Castro"). Castro contends that: (1) the indictment must be dismissed under the rule announced in Bartkus v. Illinois, 359 U.S. 121, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959) because it violates the Fifth Amendment's prohibition on double jeopardy; (2) the Government should be precluded from calling FBI Special Agent Reynaldo Tariche as an expert witness; and (3) the Court should preclude various pieces of evidence that the Government intends to offer at the trial.

1

## I. BACKGROUND

The factual background and procedural history of this case has been discussed in this Court's prior decision. United States v. Vasquez, 258 F.R.D. 68 (E.D.N.Y. 2009). The Court presumes familiarity with this decision and will discuss only those facts that bear on the instant pre-trial motions.

Castro is charged with conspiracy to commit assault with a dangerous weapon in aid of racketeering activity, 18 U.S.C. § 1959(a)(6), assault with a dangerous weapon in aid of racketeering activity, 18 U.S.C. § 1959(a)(3), and the discharge of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1). These charges stem from Castro's alleged participation in two drive-by shootings in Nassau County on June 18, 2003.

Castro is allegedly a member of MS-13, a nationwide criminal gang organized into local subunits referred to as "cliques." The evidence at the first trial showed that, on the night of the shootings, Castro, David Vasquez and two other MS-13 gang members, Ralph Admettre and Nieves Argueta, drove to a laundromat in Hempstead to search for members of SWP, a rival gang. From a van parked in a gas station parking lot across the street, Vasquez opened fire on a crowd outside the laundromat, wounding Ricardo Ramirez and Douglas Sorto.

Less than one hour later, Castro, Vasquez, Admettre and Argueta traveled to a delicatessen in Freeport where they encountered a group of young black men that they believed to be members of the Bloods, another rival gang. At Vasquez's urging, Argueta shot Carlton Alexander seven times in the back. Despite being struck by multiple gunshots, Alexander survived. Between July 10, 2003 and July 17, 2003, the Nassau County Police Department arrested Castro, Vasquez, Admettre, and Argueta for their roles in the shootings.

Following Castro's arrest, he and his defense counsel met with then Nassau County Assistant District Attorney Frank X. Schroeder. Based upon these discussions, the Nassau County District Attorney's Office ("NCDAO") determined that Castro was willing to provide important information concerning the homicide of Jaime Figueroa. Ultimately, the NCDAO offered Castro the opportunity to plead to a lesser charge in connection with the June 18, 2003 shootings in exchange for his cooperation in the Figueroa homicide prosecution. Pursuant to this agreement, the NCDAO called Castro as a witness in a grand jury proceeding related to the Figueroa homicide. Before the grand jury, Castro testified that he was a member of MS-13 and stated that Johnny Rodas and Mario Jimenez, fellow MS-13 gang members, admitted to him that they murdered Figueroa.

On May 12, 2004, former ADA Schroeder was cross-designated to serve as a Special Assistant United States Attorney to assist in the USAO's investigation of MS-13. As a result of this investigation, on June 23, 2005, a federal grand jury returned a superseding indictment against six MS-13 members including, among others, Castro, Vasquez, Admettre and Argueta, arising out of a series of violent crimes allegedly committed by MS-13, including the June 18, 2003 shootings. Prior to trial, United States District Judge Leonard Wexler severed the charges against Castro and Vasquez from the charges against several of their co-Defendants. The Defendants' remaining co-Defendants pleaded guilty to assault and Admettre pleaded to the conspiracy charge and to using a firearm during a crime of violence. However, Castro and Vasquez proceeded to trial on July 19, 2005.

At the trial, the Government called Hector Alicea, an officer with the New York State Police, to provide expert testimony with regard to MS-13. Alicea testified concerning, among other things, MS-13's history, structure, and modes of communication. The Government also

called the three shooting victims, Admettre, and another co-Defendant to testify against the Defendants. In addition, the Government offered into evidence telephone records, the gun used in the shootings, ballistics reports, and the Defendants' post-arrest confessions.

On July 26, 2005, a jury found Castro and Vasquez guilty on all counts. However, on appeal, the Second Circuit vacated their convictions and remanded the case to the District Court finding that Alicea's testimony violated the Confrontation Clause of the Sixth Amendment and Fed. R. Evid. 703 because he had taken out of court statements obtained from MS-13 members during custodial interrogations and conveyed the substance of those statements to the jury. United States v. Mejia, 545 F.3d 179, 199 (2d Cir. 2008).

At the re-trial, the Government will be required to prove, among other things, that MS-13 was a racketeering enterprise within the meaning of 18 U.S.C. § 1959(b)(1) and 18 U.S.C. § 1961(1). In particular, the Government will have to show that MS-13 was involved in acts and threats of murder. To that end, the Government intends to prove that MS-13 members planned and carried out the homicides of Figueroa, Damian Corrente, and Dagoberto Ramos, prior to committing the assaults charged in this case. In order to establish that MS-13 is a racketeering enterprise, the Government will also rely, at least in part, on the expert testimony of FBI Special Agent Reynaldo Tariche.

## II. DISCUSSION

Castro and Vasquez were, as in the first trial, scheduled to be tried together. However, Vasquez pleaded guilty on the eve of this impending trial and while the pre-trial motions were still pending before the Court. Nevertheless, the Court will address the arguments raised by Vasquez that remain relevant to Castro's trial.

**A**. **Castro's Motion to Dismiss the Indictment**

Castro claims that the indictment must be dismissed contending that his prosecution violates the Double Jeopardy Clause of the Fifth Amendment because he has already pleaded guilty to a charge arising from the June 18, 2003 shootings in an earlier state prosecution. The parties recognize that, under the dual sovereignty doctrine, successive prosecutions by state and federal authorities for the same crime generally do not offend the Double Jeopardy Clause. Heath v. Alabama, 474 U.S. 82, 88-89, 106 S. Ct. 433, 88 L. Ed. 2d 387 (1985). The dual sovereignty doctrine is founded on the notion that "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'" Id. at 88 (quoting United States v. Lanza, 260 U.S. 377, 382, 43 S. Ct. 141, 67 L. Ed. 314 (1922)).

"The only legally binding exception to the dual sovereignty doctrine is a narrow one carved out by the Supreme Court in *Bartkus v. Illinois*." United States v. Davis, 906 F.2d 829, 832 (2d Cir. 1990) (italics in original). "Successive prosecutions will be barred where one prosecuting sovereign can be said to be acting as a 'tool' of the other, or where one prosecution is merely 'a sham and a cover' for another." Id. (quoting Bartkus, 359 U.S. at 123-24). A defendant asserting this narrow exception carries the burden to show that the "state and federal prosecutions are so intertwined as to undermine the assumption that two supposedly independent criminal actions were prosecuted by separate sovereigns." United States v. Coonan, 938 F.2d 1553, 1563 (2d Cir. 1991) (citations omitted).

Castro argues that the United States Attorney's Office and the Nassau County District Attorney's Office were not operating as distinct sovereigns because the "USAO used the NCDAO as a tool to pry out confessions and inculpatory testimony from [Castro] while at the

5

same time planning his prosecution in federal court." However, there is no evidence to suggest that the NCDAO was not acting independently when they offered Castro the opportunity to plead guilty to charges in connection with the June 18, 2003 shootings in exchange for his testimony regarding the Figueroa homicide. Castro relies instead on conjecture and the chronology of the respective prosecutions in attempting to satisfy his onerous burden. However, the Second Circuit has rejected the notion that a double jeopardy violation can be inferred where federal authorities elect to pursue a prosecution after a state prosecution. See United States v. Aboumoussallem, 726 F.2d 906, 909-11 (2d Cir. 1984) (finding no double jeopardy violation where federal authorities prosecuted the defendant after he was acquitted in state court on charges arising from the same conduct).

That there appears to have been some degree of cooperation between state and federal authorities here also does not, in and of itself, support Castro's argument. See Coonan, 938 F.2d at 1563 (finding no double jeopardy violation despite the fact that there was evident cooperation between state and federal authorities); Aboumoussallem, 726 F.2d at 910 (finding that a joint investigation by state and federal authorities does not preclude separate prosecutions); United States v. Russotti, 717 F.2d 27, 31 (2d Cir. 1983) (finding that cooperation between state and federal authorities did not suggest that the state murder prosecution was merely a cover for a subsequent federal RICO case). In any event, the affidavit from former Assistant District Attorney Schroeder obviates the need to conduct a hearing into Castro's allegations. Schroeder has represented to the Court that Castro was not prosecuted at the direction of the USAO and that the USAO played no role in his prosecution. Having failed to offer any evidence that the USAO effectively controlled his state prosecution, Castro's motion to dismiss the indictment on double jeopardy grounds must be denied.

### B. The Defendants' Evidentiary Motions

Castro seeks to preclude the admission of various pieces of evidence that the Government intends to offer at the trial. The Court will address each of Castro's evidentiary objections in turn.

### 1. The Expert Testimony of FBI Special Agent Tariche

As the parties are aware, the Court has scheduled a <u>Daubert</u> hearing to address the Castro's concerns with respect to the proposed testimony of Special Agent Tariche. The Court will rule on Castro's motion after the <u>Daubert</u> hearing is completed.

### 2. Evidence of Narcotics Trafficking

The superseding indictment charges that Castro is a member of MS-13, an enterprise that is allegedly engaged in two forms of racketeering activity: (1) acts and threats of murder in violation of New York law; and (2) narcotics trafficking in violation of federal law. At Castro's first trial, the jury found that the Government failed to prove beyond a reasonable doubt that MS-13 engaged in narcotics trafficking. Castro argues that the introduction of evidence relating narcotics trafficking at the re-trial would therefore violate the Double Jeopardy Clause of the Fifth Amendment.

The parties agree that the Double Jeopardy Clause precludes the Government from attempting to prove that MS-13 engaged in narcotics trafficking as a racketeering activity. <u>See</u> <u>Ashe v. Swenson</u>, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970) ("[Collateral estoppel] means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."). In light of the jury's finding, the Government has informed the Court that it only

intends to establish that MS-13 is engaged in acts and threats of murder. The Government also represents that, prior to trial, it will submit a redacted version of the superseding indictment to the Court and defense counsel removing any reference to narcotics trafficking as a racketeering activity.

Nevertheless, the Government argues that the Court should not preclude the admission of all evidence relating to narcotics trafficking because several cooperating witnesses will testify on this subject. However, considering the jury's determination and the fact that narcotics trafficking will no longer be at issue, the Court finds that the Government may not introduce evidence of narcotics trafficking at Castro's re-trial.

**3. The Elk Street Shooting**

At the Defendants' first trial, the Government introduced evidence of a prior uncharged shooting in April of 2003 ("the Elk Street Shooting") involving Castro, Vasquez and Admettre. In particular, Admettre testified that he was with Castro, Vasquez, and Edgardo Sanchez in a van on Elk Street in Hempstead, New York when Castro and Vasquez opened fire on and began chasing a member of SWP. On appeal, Castro and Vasquez claimed that the Elk Street Shooting was offered into evidence to show their criminal propensity and that it was unduly prejudicial. Mejia, 545 F.3d at 206. However, the Second Circuit found that evidence relating to the Elk Street Shooting was properly admitted, among other reasons, to show the existence of a racketeering enterprise. Id. In particular, the Court found that:

> [w]here, as here, the existence of a racketeering enterprise is at issue, evidence of uncharged crimes committed by members of that enterprise, including evidence of uncharged crimes committed by the defendants themselves, is admissible "to prove an essential element of the RICO

>crimes charged-the existence of a criminal enterprise in which the
>defendants participated.

Id. (quoting United States v. Matera, 49 F.3d 115, 120 (2d Cir. 2007)). Here, Castro renews his objection to this evidence. However, the Court agrees with the Second Circuit's conclusion that evidence of the Elk Street Shooting is relevant to whether MS-13 is a racketeering enterprise. Even if this evidence was not relevant to establishing that MS-13 is an enterprise, it would still be admissible under Fed. R. Evid. 404(b) to show Castro's motive: in both the Elk Street Shooting and the charged shootings, he sought to harm members of rival gangs. See United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (finding that prior act evidence is admissible if offered "for any purpose other than to show a defendant's criminal propensity."). Although Castro is correct that evidence of the Elk Street Shooting presents a risk of prejudice, the evidence is manifestly probative on a critical, disputed issue: whether MS-13 engaged in acts and threats of murder. See Id. at 207 (quoting Matera, 49 F.3d at 121) (observing that although "evidence proving the existence of the enterprise through its acts will involve a considerable degree of prejudice," the evidence does not violate Fed. R. Evid. 403 because it carries important probative value). Accordingly, Castro's motion to exclude evidence of the Elk Street Shooting is denied.

**4. The Ramos, Figueroa, and Corrente Homicides**

As noted above, in order for the Government to satisfy its burden of proof with respect to whether MS-13 is a racketeering enterprise, it must show that MS-13 engaged in acts and threats of murder in violation of state law. 18 U.S.C. § 1959(b); 18 U.S.C. § 1961(1). To that end, the Government intends to establish that MS-13 planned and carried out the Ramos, Figueroa, and

9

Corrente homicides. Castro argues that evidence relating to these homicides is highly prejudicial and should be precluded.

The Court recognizes the risk of prejudice to Castro in admitting evidence of these three uncharged homicides. However, because Castro disputes that MS-13 is a racketeering enterprise, this evidence is essential to the Government's efforts to show that the gang engaged in acts and threats of murder and thus carries considerable probative value. See Coonan, 938 F.2d at 1561 (finding that evidence of uncharged violent acts by members of gang was admissible, despite its prejudicial effect, because "the evidence was certainly probative of the existence of the charged enterprise."). Accordingly, Castro's motion to preclude evidence of the Ramos, Figueroa and Corrente homicides is denied.

**5. The Wake Video**

The Government intends to introduce into evidence a video recording of members of MS-13 attending a wake for one of its deceased members. The video depicts the interaction between various MS-13 cliques and includes footage of MS-13 members wearing gang clothing and flashing gang handsigns. Castro contends that the video's probative value is outweighed by the prejudicial effect it could have on the jury. The Court disagrees.

The Second Circuit has found that the video has significant probative value in that "it confirmed the existence of the MS-13 gang and corroborated the testimony of the government's expert witness with respect to the gang's practices and conduct." United States v. Mejia, 280 Fed. Appx. 32, at *1 (2d Cir. May 28, 2008). The Second Circuit has also determined that the video went directly to whether "[the defendant's] criminal conduct was related to a racketeering enterprise." Id. Here, balancing the video's substantial probative value with the danger that it

might prejudice the jury, the Court agrees with the Second Circuit that the risk of prejudice is "vanishingly small." Id.  Accordingly, Castro's motion to preclude the wake video is denied.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that Castro's motion to dismiss the indictment is **DENIED**, and it is further

**ORDERED**, that Castro's motion to exclude the testimony of Special Agent Tariche is **DENIED**, and it is further

**ORDERED**, that Castro's motion to exclude evidence of narcotics trafficking is **GRANTED**, and it is further

**ORDERED**, that Castro's motion to exclude evidence of the Elk Street shooting is **DENIED**,

**ORDERED**, that Castro's motion to exclude evidence of the Ramos, Figueroa, and Corrente homicides is **DENIED**, and it is further

**ORDERED**, that Castro's motion to exclude the wake video is **DENIED**.

 **SO ORDERED.**

Dated: Central Islip, New York
October 3, 2009

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge
