PETER J. TOMAO, ESQ.
226 SEVENTH STREET
SUITE 302
GARDEN CITY, NY 11530

TELEPHONE: (516) 877-7015
FAX: (516) 877-7021

**JERIN ROSAS**
Legal Assistant

December 8, 2009

*Filed By ECF*
*Courtesy Copy By Next Day Delivery*

Hon. Arthur D. Spatt
U.S. District Judge
Eastern District of New York
Long Island Federal Courthouse
Central Islip, NY 11722

         Re: US v. Ledwin Castro, et al.
            Dkt. No.03 CR 851 (ADS)
            Our File Number  418.08

Dear Judge Spatt:

  We write on behalf our client, Ledwin Castro, in advance of his sentencing in the above-referenced case scheduled for Friday, December 11, 2009 at 11:30 a.m.

  As the Court is well aware, Mr. Castro was convicted after trial of one count Conspiracy to Commit Assaults with Dangerous Weapons in Aid of Racketeering Activity, three counts of Assault with a Dangerous Weapon and three Counts of Discharging a Firearm during a Crime of Violence, all stemming from the events of one night, June 18, 2003 and his involvement with the alleged MS-13 street gang.

  The Presentence Investigation Report dated November 9, 2009 (PSR) calculates that the advisory sentencing guideline range is 78-97 months (PSR ¶ 120). However, as the Court is aware Counts Five, Six and Seven provide for mandatory minimum sentences of 10 years on Count Five and 25 years each on Counts Six and Seven. Since these mandatory minimum sentences exceed the upper level of the sentencing guidelines range, we respectfully request that the Court sentence Mr. Castro to the lowest mandatory minimum sentence available.

  We made timely objections to the PSR but have not yet received a response. USPO Nicole Pizzo advised us that an addendum will be disclosed to the Court and parties prior to sentencing. We attach a copy of our objections as Exhibit A. We respectfully ask the Court to rule on any disputed matters prior to sentencing pursuant to Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure.

## The Defendant's Background

Outside of his alleged involvement with MS-13, Mr. Castro lived a life marked on one hand by hard work and strong family values and on the other hand by repeated violence directed at him and his family. This violence resulted in his hospitalization and the death of his cousin in a shooting at Mr. Castro's family's home.

Ledwin Castro, who now is 27 years old, came to the United States from El Salvador as a ten year old boy in 1993. (PSR ¶ 91). Until his arrest on July 11, 2003 on state charges for the same conduct underlying this offense, he lived with his mother, Sonia Castro, step father, Jorge Aguillar, and his siblings in Baldwin and Freeport, New York and occasionally stayed with his then-girlfriend in Amityville. Throughout this period he attended school and worked for his step-father's landscaping business. (PSR ¶¶ 106-107).

As the Court is aware Mr. Castro has been incarcerated since his arrest by the Nassau County Police on July 11, 2003. As the PSR indicates, he "adjusted well" to incarceration and had no disciplinary problems (PSR ¶ 81). The records which we received and provided to the Probation Department show that Mr. Castro actively participated in educational, vocational training and other programs while incarcerated. As the PSR indicates, he completed the GED course work but was transferred for this trail before he was able to take the test (PSR ¶ 110).

The attached letters from his family and friends describe him as a hard working friendly person. His mother, Sonia, who attended much of his recent trail, writes that Ledwin likes to work and help his family. She and her husband, Jorge Aguilar, ask the Court for justice in sentencing their son. They are aware that the law limits Your Honor's discretion in sentencing Ledwin. (Exhibit B).

Ledwin's brother, Marvin Aguilar, who is currently serving in the U.S. Air Force, and about to deploy to Afghanistan, writes that Ledwin has a great positive influence on his life. He says that Ledwin always helped him and even in his current "tough position," Ledwin continues to offer "good advice and positive reinforcement." Ledwin, Marvin says, always told him to "do the right thing and stay out of trouble." Marvin recalls how Ledwin always worked hard with their father and is a kind person. (Exhibit C.)

. Ledwin's 13 year old sister, ~~Sonia Isamar Aguilar~~, writes to the Court that her brother Ledwin is "a great brother." She recalls how he helped her with her homework and was very "responsible." She misses him. (Exhibit D).

Exhibit E contains letter from two of Ledwin's cousins, Kevin and ~~Arlene Castro~~. Kevin, who is now 20, credits Ledwin with helping him and Ledwin's brother, Marvin, to become avoid "issues" in their rough neighborhood, by stressing the importance of education and hardwork. ~~Arlene~~ who is 13 years old echoes Kevin's sentiments. She recalls Ledwin as a "hardworking and determined person" who has always "been there" for her. Kevin and Arlene ask the Court to give Ledwin a chance to come home to his family.

Other friends of Ledwin also write the Court on his behalf. The letters of Roxana Romero, Jaime Flores, and Blanca Castro are attached as Exhibit F. They recall Ledwin as a hardworking person who is loyal to his family.

Several of people whose lawns Ledwin and his step father mowed provide letters to the Court. Attached as Exhibit G are letters from Sara Guillen, Carmen De Lopez and Dr. Zenalda Romas, who all report that Ledwin was a hard worker.

Finally, we attach a letter from one of Ledwin's high school teachers, Conception Ribo. (Exhibit H). She recalls Ledwin as a "respectful and well behaved student."

These letters stand in marked contrast to the portrayal at trial of Ledwin Castro as a violent gang leader. They show that the people who knew him best, not only his family and friends, but his customers and teacher, knew him as a hardworking, respectful person.

So what brings this hardworking friendly young man before the Court? The answer comes in the police records, which we have obtained. These records reveal that since at least October 2000 Ledwin and his family have been the victims of frequent and escalating physical attacks which have left him with a permanent injury and which took the life of his cousin. In October 2001, an individual attacked Mr. Castro in the presence of a police officer. Within five months on March 23, 2001, multiple gunshots struck the Castro home. Mr. Castro, himself, as a pedestrian was struck by a motor vehicle, which fled the scene on May 19, 2001. Mr. Castro was hospitalized with permanent injuries. On October 13, 2002 and December 18, 2002, shots were fired at Ledwin and his friends. On the later occasion, the police report indicates that the shots grazed the pants of one of his friends. On February 9, 2003, Ledwin was called to help a person struck in the leg in a drive by shooting. Mr. Castro took this person to the hospital and gave a statement to the police. On one occasion, Ledwin was at his parents' home with his girlfriend when shots were fired into the house. On another occasion, in January, 2001, shots were fired into the family home and struck and killed Ledwin's cousin.

### Mr. Castro Accepted Responsibility for His Actions

As the Court is aware, Mr. Castro admitted his guilt to the underlying conduct and received a state sentence of five years in prison before he learned that he had to face federal charges for the same offense. Under the sentencing guidelines, Mr. Castro is not eligible for an adjustment for acceptance for responsibility since the government to its burden of proof at trial. (PSR¶34). By pleading not guilty, he resisted the application of the draconian federal sanctions of RICO and 18 USC §924(c)(1), which increased his sentence exponentially. However, we have not challenged the finding in the PSR against this adjustment since even without this adjustment, the resulting sentencing guideline imprisonment range of 78 to 97 months is less than the smallest mandatory minimum sentence which the Court must impose. Under the circumstances, we ask the Court to consider Mr. Castro's plea in imposing sentence.

### Mr. Castro Has Already Received and Served a State Sentence for these Crimes

As the Court is aware, Mr. Castro pled guilty, was sentenced and has completed that sentence for the underlying offense in this case. On March 1, 2004, Mr. Castro was sentenced on his guilty plea in Nassau County Court to a felony based on the conduct, which in the words of the PSR "forms the basis for the defendant's conviction." (PSR¶77). Mr. Castro received a sentence of 5 years custody. He was returned to serve that sentence on January 31, 2006 and completed it on August 29, 2008 (PSR¶ 82). In imposing sentence, the Court should consider that Mr. Castro has served substantial time for the same offense for which the Bureau of Prisons is unlikely to give him credit.

### The Court Should Not Impose Separate, Consecutive Sentences on Counts 5 and 6

The Court should not sentence Mr. Castro to consecutive sentences on each of the Title 18, U.S.C. § 924(c)(1) counts. Because the shootings arose from a single course of action, the charges in Counts 5 and 6 are multiplicitous.

The Second Circuit has held in certain cases that multiple predicate offenses can give rise to only a single §924(c)(1) offense. *United States v. Finley*, 245 F.3d 199 (2d Cir. 2001); *United States v Wallace*, 447 F.3d 184 (2d Cir 2006). See, *United States v Baptiste*, 309 F3d 274 (5th Cir. 2002), cert. denied, 538 US 947, 155 L Ed 2d 489, 123 S Ct 1621 (2003). See also, *United States v. Phipps*, 319 F.3d 177, 188 (5th Cir. 2003) (applying the rule of lenity, resolving doubts about an ambiguous criminal statute in favor of the defendant).

In *Finley*, the Second Circuit held that the "[t]he statute [§ 924(c)(1)] does not clearly manifest an intention to punish a defendant twice for continuous possession of a firearm in furtherance of simultaneous predicate offenses consisting of virtually the same conduct." 245 F.3d at 207. In that case, the Second Circuit reversed the second § 924(c)(1) conviction where both convictions stemmed from a single course of action, i.e., drug possession and drug distribution. Similarly, in *Wallace*, the Second Circuit held that the use of a firearm in connection with a single drive-by shooting constituted a single unit of prosecution despite the existence of two predicate offenses, namely a drug trafficking conspiracy and firing a weapon into a crowd of two or more persons in furtherance of major drug offense. 447 F.3d at 184. These holdings are clearly applicable to the instant offense.

We are aware that in its opinion reversing Mr. Castro's prior conviction, the Second Circuit distinguished these precedents from the instant case *United States v. Mejia*, 545 F.3d 179, 204-206 (2d Cir. 2008). We respectfully submit that this dicta was wrong and should not be applied in the instant case.

In *Mejia*, the Second Circuit panel construed *United States v. Lindsay*, 985 F.2d 666, 674 (2d Cir. 1993) as holding that the appropriate unit of prosecution to be the predicate offense, 545 F.3d at 204-05, which in the instant case were the assaults, 545 F.3d 206. The *Lindsay* held where the government links multiple firearms to a single crime, only one § 924(c)(1) violation occurs. 985 F.2d at 674. However, the *Lindsay* court did not address the

4

issue here of whether a single use of a firearm resulting in injuries to two victims created two separate units of prosecution.

The *Mejia* panel distinguished *Finley* and *Wallace* on the grounds that since those cases each dealt with a single course of action involving controlled substances which gave rise to multiple possible offenses raising concerns which are not present in the instant case. 545 F.3d 206. However, this is a distinction without a difference, in the instant case, there was as in *Finley* and *Wallace*, a single course of action which resulted in multiple offenses.

Accordingly, the Court should impose no impose separate sentences on the counts 5 and 6.

### Conclusion

We respectfully request that the Court consider the foregoing and sentence Mr. Castro to the lowest mandatory minimum sentence available.

Respectfully submitted,

PETER J. TOMAO, ESQ.

PJT/jr

Attachments (Exhibits A through H)
(Exhibits B through H are not being filed electronically to comply with Fed. R. Crim. P. 49.1)

cc:   AUSA Richard Donoghue and John Durham by ECF