```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

        -against-                      MEMORANDUM & ORDER
                                       03-CR-0851-10(JS)
LEDWIN CASTRO,

                    Defendant.
----------------------------------X
APPEARANCES

For Defendant:      Ledwin Castro, Pro Se
                    Reg. No. 68721-053
                    Federal Correctional Institution Schuylkill
                    Inmate Mail/Parcels
                    P.O. Box. 759
                    Minersville, Pennsylvania  17954

For United States:  No Appearance
```

SEYBERT, District Judge:

Presently before the Court is the February 10, 2025 letter motion of Defendant Ledwin Castro ("Defendant") requesting, for a second time, that this Court forward its July 7, 2021 Memorandum and Order (hereafter, the "July 2021 M&O") that granted Defendant's motion for compassionate release, made pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), to the Bureau of Prisons (hereafter, the "Second Forward Request").  (See ECF No. 752.)  The Second Forward Request is **GRANTED in part** and **DENIED in part**.

As the Court stated in its October 20, 2021 Memorandum & Order denying Defendant's first Forward Request (hereafter, the "First Forward Request) (see ECF No. 744):

> In granting Defendant's motion for compassionate release, this Court ordered, among other things: (1) Defendant's sentence of imprisonment be "reduced to a total of thirty (30) years and one (1) day;" (2) the Clerk of Court "issue an Amended Judgment reflecting Defendant's reduced sentence in accordance with" the July 2021 M&O; and (3) <u>"in all other respects</u>, [that] <u>the Court's January 12, 2010 Judgement</u> (ECF No. 611) <u>remains unchanged."</u> (July 2021 M&O, ECF No. 741, at 22 (emphasis added).) Thus, an Amended Judgment entered on July 9, 2021. (<u>See</u> Am. J., ECF No. 743.) Of significance and in accordance with the July 2021 M&O, the Amended Judgment merely restated its original recommendation to the Bureau of Prisons [("BOP")] "that the defendant receive credit for time already served in Federal custody from 2/10/2004 through 1/31/2006 and 8/29/2008 to the current date; and in State custody from 7/11/2003 to 2/10/2004 and 1/31/2006 through 8/29/2008." (Am. J., at 3; <u>cf.</u>, Jan. 12, 2010 J., ECF No. 611, at 3 (making the same recommendation, verbatim).)

(Case Docket, Oct. 20, 2021 Memo. & Order, ECF No. 746.) The Court denied the First Forward Request, observing, first, "that the time-credit recommendation restated in the 2021 Amended Judgment is more than ten years old, and there is no indication that Defendant sought time-credit earlier" and, second, Defendant had "the Federal Bureau of Prisons' Administrative Remedy Program [] available to him" if he wanted to seek time-credit based upon the Court's recommendation. (<u>Id.</u> at 2.)

Now, after pursuing his request for time-credit via the BOP's administrative remedy process, which request was denied (<u>see</u> Second Forward Request), Defendant once more requests the Court

Page 2 of 7

"please provide [its July 2021 M&O] to the appropriate BOP official". (Id.)  It is Defendant's contention that, by this Court having reduced Defendant's sentence to 30 years and 1 day and recommending he receive credit for time already served, he "should have a projected release date with good conduct time on or about 7/3/2029", but the "BOP's computation data sheet shows [Defendant's] projected release date with good conduct time to be 11/11/2029."  (Id.)  Defendant further maintains the BOP is "unnecessarily prolong[ing his] incarceration" which:

> will cause: (a) longer exposure to harsher prison conditions that have evolved since Covid; (b) prolonged exposure to an ever increasing atmosphere of violence; (c) prolonged exposure to increasing institutional cell lockdowns; (d) continued imprisonment that only adds to the BOP's present over-crowdness [sic]; (e) undue hardship in reuniting with my family; (f) lack of confidence in the judicial system; (g) and an unnecessary financial burden to tax payers.

(Id.)  The Court is unpersuaded.

To begin, the Court's time-credit recommendation to the BOP was just that, a recommendation.  It is well-settled such recommendations are not binding on the BOP. See United States v. Pineyro, 112 F.3d 43, 45 (2d Cir. 1997) ("[I]t falls to BOP, not the district judge, to determine . . . whether the defendant should receive credit for time spent in custody before the sentence 'commenced'."  (citing 18 U.S.C. § 3585(b), and United States v.

Wilson, 503 U.S. 329 (1992) (BOP determines credit issues, not the district courts)). Indeed:

> [a]lthough a prisoner can challenge the determination of credit on his federal sentence,
>
>> [t]he Attorney General, through the BOP [(Bureau of Prisons)], possesses the sole authority to make credit determinations pursuant to 18 U.S.C. § 3585(b); the district courts do not have authority to order the BOP to either grant or deny credit or to disregard the BOP's calculations. Although prisoners may seek judicial review of the BOP's sentencing determinations after exhausting their administrative remedies, the district court is without jurisdiction to compute sentencing credit if a prisoner does not challenge his sentence and has not sought administrative review.
>
> United States v. Whaley, 148 F.3d 205, 206–07 (2d Cir.1998) (citing United States v. Wilson, 503 U.S. 329, 333, 335, 112 S. Ct. 1351, 117 L. Ed.2d 593 (1992) and United States v. Pineyro, 112 F.3d 43, 45 (2d Cir.1997)); see also Pineyro, 112 F.3d at 45 ("After a defendant is sentenced, it falls to BOP, not the district judge, to determine when a sentence is deemed to 'commence'; whether a defendant should receive credit for time spent in custody before the sentence 'commenced'; and whether the defendant should be awarded credit for 'good time.'" (citations omitted)); see also, e.g., DeVivo v. Mance, No. 08-CV-673(DNH/RFT), 2009 WL 2882937, at *6 (N.D.N.Y. July 20, 2009) ("It is the United States Attorney General, who in turn delegated responsibility to the Bureau of Prisons (BOP), and not the federal courts, who are charged with the first opportunity to determine

> whether [petitioner] is entitled to the credit he alleges." (citations omitted)).

Evans v. United States, No. 08-CV-3830, 2010 WL 2026433, at *1–2 (E.D.N.Y. May 17, 2010), aff'd, 419 F. App'x 53 (2d Cir. Apr. 6, 2011).  Further, pursuant to 28 U.S.C. § 2241, "a district court has the power only to review a decision by the Bureau of Prisons" regarding its "computation of credit on a federal sentence".  Id. at *2.  Hence:

> Section 2241 . . . is the proper means to challenge the execution of a sentence.  In a § 2241 petition[,] a prisoner may seek relief from such things as, for example, the administration of his parole, computation of his sentence by parole officials, disciplinary actions taken against him, the type of detention, and prison conditions in the facility where he is incarcerated.

Adams v. United States, 372 F.3d 132, 135 (2d Cir. 2004) (emphasis in original).  This Court has recently reiterated the same:

> Under 28 U.S.C. § 2241, a petitioner can challenge the execution of his sentence, including the computation of that sentence by prison officials. See Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) (stating a Section 2241 habeas petition "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction").  Thus, pursuant to Section 2241, an inmate may challenge such matters as the computation of his sentence by prison officials. See Poindexter v. Nash, 333 F.3d 372, 377 (2d Cir. 2003) ("Under § 2241, a prisoner may challenge the . . . calculations by the Bureau of Prisons of the credit to be given for other periods of detention." (citations and internal quotation marks

> omitted)); see also Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001); Zenquis v. Pullen, No. 3:22-CV-1151, 2023 WL 2931585, at *1 (D. Conn. Apr. 13, 2023); Bracamonte v. Von Blanckensee, No. 18-CV-0166, 2019 WL 1368084, at *1 (S.D.N.Y. Mar. 26, 2019).  Further, a Section 2241 habeas petition must be brought in the district where the petitioner is imprisoned.  See Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004).

United States v. Yong, 2024 WL 3648259, at *7 (E.D.N.Y., 2024); see also United States v. Sessum, No. 15-CR-0667, 2023 WL 3319424, at * 5 (S.D.MN.Y. May 9, 2023) ("[Defendant] must file a petition pursuant to 28 U.S.C. § 2241 in the district where he is serving his sentence . . . in order to challenge the execution of his sentence, including the computation of sentence credits." (citations omitted)).

Here, even if the Court were to construe Defendant's Second Forward Request as a Section 2241 Petition, because he is currently confined in a facility in Pennsylvania,[1] this Court lacks jurisdiction to rule upon it.  And, to the extent Defendant is seeking a further sentence reduction based upon arguments for compassionate release, that is not readily apparent from the Second Forward Request and his list of alleged and speculative results Defendant claims he will suffer from an "unnecessarily prolong[ed]

---

[1] See BOP Find an Inmate, Ledwin Castro (BOP Reg. No. 68721-053) (identifying Defendant's location as "FCI Schuylkill", which is located in Minersville, Pennsylvania), https://www.bop.gov.inmateloc (last visited Feb. 25, 2025).

[] incarceration". (Second Forward Request.) Thus, upon the record presented, the Court finds no basis for granting Defendant's Second Forward Request. Nonetheless, while the Court declines to provide its July 2021 M&O "to the appropriate BOP official" (id.), it will provide a copy of said July 2021 M&O, together with the July 2021 Amended Judgment, to Defendant.

Accordingly, **IT IS ORDERED** that the Second Forward Request (ECF No. 752) is **GRANTED in part**, to the extent the Court will provide Defendant with copy of its July 2021 M&O (ECF No. 741) and its July 9, 2021 Amended Judgment (ECF No. 743), copies of which he may use as he determines is appropriate, and is **DENIED in part**, i.e., in all other respects; and

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to serve Defendant with a copy of this Order, as well as the above-referenced July 2021 M&O and Amended Judgment, making the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February 27, 2025
       Central Islip, New York